IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:19-CV-301-FL

| | | |
|---|---|---|
| AMY OSTENDORF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| ANDREW SAUL, Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on the parties' cross-motions for judgment on the pleadings. (DE 17, 19). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Kimberly A. Swank issued a memorandum and recommendation ("M&R") (DE 21), wherein it is recommended that the court deny plaintiff's motion, grant defendant's motion, and affirm the final decision by defendant. Plaintiff timely objected to the M&R, and defendant responded. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court rejects the recommendation in the M&R. Plaintiff's motion for judgment on the pleadings is granted, and defendant's motion for judgment on the pleadings is denied.

**BACKGROUND**

On August 25, 2014, plaintiff filed an application for a period of disability and disability insurance benefits, alleging disability beginning January 1, 2013. The application was denied initially and upon reconsideration. A hearing was held on December 8, 2016, before an

administrative law judge ("ALJ"), and at that time plaintiff amended her alleged onset date to January 1, 2014. In a decision dated March 13, 2017, the ALJ determined that plaintiff was not disabled. The Appeals Council granted plaintiff's request for review and remanded the matter to the ALJ. On May 15, 2018, the ALJ held another hearing, after which the ALJ determined that plaintiff was not disabled in decision dated October 19, 2018. After the appeals council denied plaintiff's request for review, plaintiff commenced the instant action on July 22, 2019, seeking judicial review of defendant's decision.

## DISCUSSION

A.      Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review defendant's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). The standard is met by "more than a mere scintilla of evidence . . . but less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In reviewing for substantial evidence, the court is not to "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for defendant's. Craig, 76 F.3d at 589.

"A necessary predicate to engaging in substantial evidence review . . . is a record of the basis for the ALJ's ruling, which should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir.2013). An ALJ's decision must

2

"'include a narrative discussion describing how the evidence supports each conclusion,'" Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)), and an ALJ "must build an accurate and logical bridge from the evidence to his conclusion." Id. (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)).

To assist in its review of defendant's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." See 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendation." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

3

(1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medial impairment meets or exceeds the severity of one of the [listed] impairments; (4) the claimant can perform [his or her] past relevant work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the social security claimant during the first four steps of the inquiry, but shifts to defendant at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In the instant matter, the ALJ performed the sequential evaluation. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 1, 2014, the alleged onset date. At step two, the ALJ found that plaintiff had the following severe impairments: pulmonary embolism, asthma, chronic obstructive pulmonary disease, obesity, headaches, osteoarthritis of the right knee status total knee arthroplasty and revision, degenerative disc disease, bipolar disorder – depressive type, borderline personality disorder, and generalized anxiety disorder. However, at step three, the ALJ determined that these impairments were not severe enough to meet or, either individually or in combination, medically equal one of the listed impairments in the regulations. See 20 C.F.R. § 404, Subpt. P, App. 1.

Before proceeding to step four, the ALJ determined that during the relevant time period plaintiff had the residual functional capacity ("RFC") to perform light work, with additional limitations. As pertinent here, the ALJ determined:

> The claimant can sit for 6 hours and stand or walk for 6 hours during a normal 8-hour workday. She may require the option of alternating between sitting, and standing or walking, at 30-minute intervals, but can remain at the workstation unless on a scheduled break. The claimant may occasionally require the use of an assistive device in the non-dominant upper extremity to aid with walking or standing on uneven terrain. . . . She is limited to occasional stooping, kneeling, and crouching, and occasional use of the dominant right lower extremity to operate foot and leg controls.

4

(Tr. 20). At step four, the ALJ concluded plaintiff is unable to perform any past relevant work. However, the ALJ found that there are jobs that exist in significant numbers in the national economy that plaintiff can perform. Thus, the ALJ concluded that plaintiff was not disabled under the terms of the Social Security Act.

B.    Analysis

Plaintiff argues that the ALJ failed to perform a function by function assessment of plaintiff's ability to walk and stand due to impairments in her right knee. Thus, she argues that defendant's decision should be reversed, or in the alternative remanded for additional findings concerning plaintiff's RFC. The court agrees with plaintiff's alternative argument, where the ALJ's decision does not sufficiently explain plaintiff's capacity to walk and stand 6 hours per day, with intervals of sitting or standing, in light of the evidence in the record.

The RFC "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Monroe v. Colvin, 826 F.3d 176, 187 (4th Cir. 2016) (quotations omitted). "Only after such a function-by-function analysis may an ALJ express RFC in terms of the exertional levels of work." Id. "In all cases in which symptoms, such as pain, are alleged, the RFC assessment must include a resolution of any inconsistencies in the evidence as a whole set forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work." Id. at 188.

"Remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quotations omitted). "[T]he RFC assessment must include a narrative discussion describing how

the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Monroe, 826 F.3d at 189 (quotations omitted). In doing so, "the ALJ must build an accurate and logical bridge from the evidence to his conclusion." Id. (quotations omitted).

Here, the ALJ's analysis is not sufficient for meaningful judicial review because it fails to build an accurate and logical bridge from the evidence of plaintiff's right knee impairment to the ALJ's conclusion that plaintiff is capable of walking or standing six hours per day. In particular, the ALJ determined that plaintiff's knee impairments were not disabling, in reference to medical evidence regarding plaintiff's status post-surgery in March 2018:

> The claimant's most significant physical issue has clearly been her right knee, for which she has undergone multiple arthroscopic surgeries, injections, a replacement, and a later revision. Although the claimant testified that she felt that her knee was getting worse since the revision surgery, the last medical records related to her knee shows her reporting that she was doing better and having significantly less swelling. The claimant does use compression stockings but her orthopedic providers noted that she may wean out of this over time if she notices less swelling.

(Tr. 35).

The ALJ's discussion of plaintiff's last medical visit in the record is insufficient to explain a resolution of conflicts in the evidence for several reasons. As an initial matter, the ALJ does not explain how plaintiff's status post-surgery in March 2018 resolves conflicting evidence from the entire time period from alleged onset date of January 1, 2013, to the date of decision in October 2018. During this time period there is substantial evidence demonstrating an inability to stand or walk for 6 hours during an 8 hour workday, including examination records and plaintiff's testimony.

For example, in February 2015, physician upon examination noted "constant pain" in knees, and pain when "standing, walking, climbing up and down stairs." (Tr. 971). MRI findings in April 2015 showed "deficiency of the anterior horn and body" of the lateral meniscus, and

6

"partial loss and surface irregularity throughout the patellar cartilage." (Tr. 981). In October 2015, plaintiff imported "increased pain in the knee," with radiology demonstrating "near bone-on-bone lateral compartment degenerative changes," resulting in an assessment of "[r]ight knee pain and weakness likely secondary to significant lateral compartment primary osteoarthritis." (Tr. 1318).

Upon examination in December 2015 it is noted "[p]ain is lateral and inferior to the patella and has been present for one year," where "lateral and medial movements worsen the pain," supported by examination findings. (Tr. 1327). In March 2016, it is noted that plaintiff "had a lot of arthritis in this [right] knee," and plaintiff "has been struggling a bit with pain and swelling," with swelling occurring after 10 minutes on a stationary bike. (Tr. 1313). In reference to a prior surgery, the physician noted "that it typically takes 8-12 months before she really sees significant benefits from this." (Id.).

Provider notes from December 2016 reported "progressive pain and swelling," following exercise, and that "[e]xercise, sitting, standing and walking tend to aggravate her symptoms." (Tr. 1366). In January 2017, plaintiff reported "still having significant pain in the anterior knee," "[a]ntalgic gait," and "significant pain with resisted extension and straight leg raise." (Tr. 1364). Treatments discussed include ice 2-3 times a day, at least, for 25 minutes. (Id.). In June 2017, injections had "not made any difference whatsoever," with plaintiff reported being "miserable, it hurts all the time, particularly when she is walking." (Tr. 1384).

While the ALJ does recount some of the foregoing pre-2018 history of plaintiff's knee condition prior to 2018, (see, e.g., Tr. 24-25), the ALJ does not "build an accurate and logical bridge from the evidence to his conclusion" that plaintiff is capable of walking and standing six hours or more per day during the relevant time period. Monroe, 826 F.3d at 189 (quotations omitted). Therefore, remand is required for the ALJ "to include a resolution of any inconsistencies

in the evidence as a whole," and to "set forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work" during the relevant time period.  Id. at 188.

In this respect, the instant case stands in contrast to others where an ALJ's reference to prior medical records was deemed sufficient to meet the ALJ's obligation to consider the "whole record" and to explain inconsistencies in the record.  For example, in Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014), the United States Court of Appeals for the Fourth Circuit held that an ALJ's references to plaintiff's "history of thoracic and lumbar fusion," while noting that "treatment notes from the relevant period document that the claimant was responding well to treatment with minimal complaints," were sufficient to satisfy the ALJ's obligation to review the "whole record" and explain its significance to the ALJ's decision.  Here, by contrast, there is no such similar explanation by the ALJ nor record of unqualified treatment notes showing plaintiff responding well to treatment with minimal complaints. [1]

In addition, in focusing on the post-operative examination in March 2018, the ALJ does not account for or explain the conflicting testimony by plaintiff after that date, at the time of hearing.  For example, the ALJ noted that "[t]he claimant does use compression stockings but her orthopedic providers have noted that she may wean out of this over time if she notices less swelling."  (Tr. 35) (emphasis added).  However, at hearing in May, plaintiff testified: "I do wear a compression sleeve on my legs. It's swelling so bad. . . . I had a real bad outcome from surgery." (Tr. 55).  The ALJ questioned plaintiff "I saw at one point they said it looked like you . . . could come off something, but you never have been able to get off of it?" to which plaintiff responded

---

[1]     The court likewise departs in this respect from the reasoning of the M&R regarding the need for further explanation to account for conflicts in the evidence from 2014 to 2017.  While the M&R limited its review to the ALJ's assessment of "the latest medical records," (M&R (DE 21) at 13 n. 3), the court determines herein that the existence of inconsistent and conflicting evidence in the record pertaining to the entire alleged period of disability precludes meaningful review.

in the affirmative, and that she has not been driving. (Id.). Plaintiff further testified it hurts while sitting, and riding as a passenger in the car for 35 minutes to the hearing "posed a problem" for her, in that "when [she] got out of the car, which is real hard to get my right leg out of the car, it just - - I can't. The level of pain is probably an eight from one to 10." (Id.). In sum, there is no evidence noted in the record that the contingency noted by the ALJ, amelioration of swelling, ever came to pass post-surgery. Plaintiff's testimony is to the contrary. (See id.).

Thus, without further explanation, it is not clear if the ALJ viewed plaintiff's testimony as not credible or not pertinent to plaintiff's functional limitations. Likewise, in light of the record of prior knee surgeries that were unsuccessful in fully remedying plaintiff's functional limitations, plaintiff's testimony further draws into question the extent to which the ALJ can rely upon post-operation treatment notes in March 2018 in determining plaintiff's RFC for the entire period in question. See, e.g., Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 264 (4th Cir. 2017) (determining remand for further explanation necessary, where injections cited by ALJ "provided only temporary relief" from back pain).

Defendant raises several arguments in support of the ALJ's decision, which are insufficient to overcoming the shortcomings noted herein. Defendant argues that the ALJ carefully considered plaintiff's "complete longitudinal history, including 'multiple knee surgeries, culminating in a right knee replacement and subsequent revision' when evaluating [plaintiff's] symptoms to determine her RFC." (Def's Resp. (DE 23) at 2-3 (citing Tr. 23-26)). However, as explained above, an examination of that history alone does not sufficiently explain how the ALJ resolved conflicts in the evidence, including examination findings demonstrating disabling pain and conditions in the right knee.

9

Defendant also argues that the ALJ's assessment of the evidence "is consistent with evidence throughout the relevant period that regularly describes [plaintiff's] symptoms as 'episodic' or 'periodic' knee pain following her surgeries." (Id. at 3). But, this argument misses the mark for two reasons. First, the ALJ himself never characterized in his own decision plaintiff's symptoms throughout the relevant time period as only "episodic" or "periodic," or not covering a time period greater than the requisite 12 month time period for disability evaluation. (See, e.g., Tr. 23-26, 35). In this respect, defendant offers a post-hoc explanation and rational for the ALJ's decision, which is not sufficient to meet the requirements for meaningful review. See Monroe, 826 F.3d at 189. Second, where plaintiff had seven surgeries during the relevant time frame, from 2014 to 2018, pain following surgeries also properly may be considered symptoms arising prior to the next surgery, and restricting plaintiff's functioning until that next surgery. (See, e.g., Tr. 1313, 1384). While the ALJ ultimately may be able to explain and isolate within a 12 month period any periods of functional impairment, the ALJ's present decision does not do so sufficiently to permit meaningful review.

Defendant also argues that plaintiff did not specifically allege or argue that she experienced a "closed" period of disability in her opening brief, and thus waived any argument based upon such a closed period. (Def's Resp. (DE 23) at 4). Plaintiff does not, however, concede that her disability ended upon surgery in March 2018, and she thus does not rely upon a determination of a "closed" period of disability. (See, e.g., Pl's Obj. (DE 22) at 2 ("even if we were to assume arguendo that [plaintiff] was no longer under a disability as of her March 2018 [exam] . . . there is still a four year period during which she could have qualified for disability benefits.")). In any event, the court's determination herein is supported by plaintiff's original argument, set forth in her memorandum in support of motion for judgment on the pleadings, that the ALJ failed to

10

perform adequately a function by function assessment of plaintiff's standing and walking limitations, in light of contradictory evidence in the record. (Pl's Mem. (DE 18) at 15-17).

Defendant argues that plaintiff's claim invites this court to reweigh the evidence impermissibly and craft a different RFC based upon a disagreement with the ALJ's decision. However, the court is not remanding for a reward of benefits, but rather so that the ALJ may provide an explanation that allows for meaningful review. In this respect, the court does not express an opinion on the weight to be given to conflicting evidence in the record. Instead it is for the ALJ in the first instance to provide an "RFC assessment [that] include[s] a resolution of any inconsistencies in the evidence as a whole," and "set forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work." Monroe, 826 F.3d at 188. In this case, the ALJ's RFC assessment does not accomplish this objective in light of substantial evidence in the record demonstrating limitations in plaintiff's ability to stand and walk each day during the relevant time period from 2014 to 2018.

In sum, remand for further evaluation of the evidence and explanation of defendant's decision is required to permit meaningful review.

## CONCLUSION

Based on the foregoing, and upon de novo review of the record, the rejects the recommendation in the M&R. Plaintiff's motion for judgment on the pleadings (DE 17) is GRANTED, and defendant's motion for judgment on the pleadings (DE 19) is DENIED. This matter is REMANDED to defendant pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this order. The clerk is DIRECTED to close this case.

SO ORDERED, this the 25th day of September, 2020.

LOUISE W. FLANAGAN
United States District Judge